**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELAINE L. CHAO**, <br> Secretary of Labor, <br> United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,** <br><br> Defendant. | Civil Action No. 08-1394 (JDB) |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Elaine L. Chao, Secretary of Labor, United States Department of Labor, respectfully moves the Court, pursuant to Fed R. Civ. Pro. 56, to enter summary judgment in favor of Plaintiff because there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law. In support of this Motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities, the attached Statement of Material Facts Not In Genuine Dispute, and the supporting Declaration and Exhibits. A Proposed Order consistent with this Motion is also attached.

Defendant should take notice that any factual assertions contained in the accompanying Declaration and other attachments in support of this Motion will be accepted by the Court as true unless Defendant submits its own affidavit or other documentary evidence contradicting the assertions in Plaintiff's attachments. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7, and Federal Rule of Civil Procedure 56(e), which provide as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,


_____/s/_____
RONALD C. MACHEN JR., DC BAR # 447889
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR # 434122
Assistant United States Attorney


_____/s/_____
ROBIN M. FIELDS, DC BAR # 461601
Special Assistant United States Attorney
555 Fourth St., N.W., Room E4817
Washington, D.C. 20530
(202) 514-7139
(202) 514-8780
robin.fields@usdoj.gov

Of Counsel:
M. Patricia Smith, Solicitor of Labor
Katherine E. Bissell, Associate Solicitor for Civil Rights and Labor-Management

Sharon E. Hanley, Counsel for Labor-Management Programs
Willie B. White, Senior Attorney
U.S. Department of Labor
Office of the Solicitor
Civil Rights and Labor-Management Division
200 Constitution Avenue NW, Room N-2474
Washington DC 20220

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELAINE L. CHAO**, | ) |
| Secretary of Labor, | ) |
| United States Department of Labor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 08-1394 (JDB) |
| | ) |
| **AMERICAN FEDERATION OF** | ) |
| **GOVERNMENT EMPLOYEES,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This action is brought by Plaintiff Elaine L. Chao, Secretary, United States Department of

Labor ("Plaintiff" or "Secretary"), pursuant to Title IV of the Labor-Management Reporting and

Disclosure Act of 1959, 29 U.S.C. § 401, *et seq.*, (the "LMRDA" or the "Act").  The Secretary's

investigation of a complaint filed pursuant to Title IV of the LMRDA revealed that Defendant,

American Federation of Government Employees ("Defendant" or "AFGE"), violated section

401(e) of the LMRDA, 29 U.S.C. § 481(e), in the conduct of its 2008 election for the office of

District 2 National Vice President, by denying an AFGE member in good standing the right to

run for union office.  The investigation further revealed that this violation may have affected the

outcome of the election for the office of District 2 National Vice President.  Pursuant to section

402 of the LMRDA, 29 U.S.C. § 482, the Secretary is seeking an order voiding Defendant's

election for the office of District 2 National Vice President and directing Defendant to conduct a new election for said office under the Secretary's supervision.

## II.  FACTUAL BACKGROUND

On August 11, 2008, Plaintiff filed a Complaint in United States District Court, under Title IV of the LMRDA, seeking declaratory and injunctive relief based on the fact that Defendant's May 17, 2008 election of union officers, for the office of AFGE National Vice President, District 2, was subject to the provisions of the LMRDA, but violated Title IV of the Act.  Dkt. 1.  Although Defendant answered the Complaint, and generally denied Plaintiff's allegations, there are no material facts in genuine dispute in this case and Plaintiff is entitled to judgment as a matter of law.

Plaintiff hereby incorporates its Statement of Material Facts Not in Genuine Dispute and the Declaration of Cynthia Downing, Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), Employment Standards Administration, United States Department of Labor ("Downing Decl."), filed contemporaneously with this memorandum.

## III.  STANDARD OF REVIEW

On a motion for summary judgment under Rule 56 of the Federal Rules, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c); see Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002).  A material fact is one that is capable of affecting the outcome of the litigation.  Anderson v. Liberty Lobby, 477 U.S. at 248.  A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," id, as opposed to evidence that "is so one-sided that one party must prevail as a matter of law."  Id. at 252.  A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant.  Id. at 255.  The nonmoving party, however, must do more than simply "show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the nonmovant must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id. at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).  In the end, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.  ARGUMENT

**A.      AFGE Violated Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), When It Denied Its Member, Vincent Castellano, the Right To Be Nominated And to Run for A National AFGE Office.**

The principal purpose of the LMRDA is to promote fair and democratic practices in unions.  In the 1950's, Congress held hearings in which it investigated the nation's unions and found corruption in union leadership and disregard for the rights of the rank-and-file members. See Wirtz v. Hotel, Motel and Club Employees Union Local 6, 391 U.S. 492, 497-98 (1968); Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 468-70 (1968).  Through the

3

LMRDA, Congress sought to "protect the rights of rank-and-file members to participate fully in the operations of their union through processes of democratic self-government. . . ." Wirtz v. Hotel Employees, 391 U.S. at 497.  Recognizing that free and fair elections were essential to union self-government, Congress provided the safeguards of Title I and Title IV of the LMRDA "to provide a fair election and guarantee membership participation." American Federation of Musicians v. Wittstein, 379 U.S. 171, 182 (1964); see also Wirtz v. American Guild Variety Artists, 267 F. Supp. 527 (S.D.N.Y. 1967) (Congress intended that unions conduct democratic and scrupulously fair elections).

Among the protections in the LMRDA is that "every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 and to reasonable qualifications uniformly imposed). . . ." 29 U.S.C. § 481(e).  Whether or not an individual has been denied the right to be a candidate initially turns on whether such individual is a "member" or a "member in good standing" of the labor organization conducting the election and whether the individual has satisfied reasonable requirements the union has set for members who seek to run for and hold union office.  Section 3(o) of the LMRDA defines member as follows:

> Member or member in good standing, when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such labor organization, and who neither has voluntarily withdrawn from membership nor  has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

29 U.S.C. § 402(o).

4

Therefore, under the LMRDA, an individual is a member or member in good standing of a labor organization when such individual has fulfilled the requirements for membership in the labor organization and remains so unless or until one of two events occurs: (1) the member voluntarily withdraws from membership or (2) the union expels or suspends the member from membership after appropriate proceedings.  See 29 U.S.C. § 402(o).  Once a person fulfills the requirements for membership, as prescribed in the governing documents of the union, such person is a member, as defined in section 3(o) of the Act.  See 29 U.S.C. § 402(o); Hughes v. Local No. 11, International Association of Ironworkers, 287 F.2d 810, 817 (3d Cir. 1961).

Section 401 (e) of the LMRDA recognizes that labor organizations may have a legal interest in prescribing minimum standards for candidacy.  29 U.S.C. § 481(e).  As such, section 401(e) of the LMRDA provides that candidacy for union office is subject to reasonable requirements, uniformly imposed.  29 U.S.C. § 481(e).  The question whether a qualification is reasonable is a matter that is not susceptible to a precise definition and will ordinarily turn on the facts in each case.  In Wirtz v. Hotel, Motel and Club Employees Union, Local 6, the Supreme Court held that "[c]ongress plainly did not intend that the authorization in section 401(e) of 'reasonable qualifications uniformly imposed' should be given a broad reach.  The contrary is implicit in the legislative history of the section and in its wording that 'every member in good standing shall be eligible to be a candidate and to hold office'"  391 U.S. 492, 499 (1968); see also  29 C.F.R. § 452.36.

Here, Vincent Castellano worked as a civilian for the United States Air Force from 1974 to 1993.  Downing Decl., ¶ 5.  In January 1975, Castellano joined Local 1778, a local union affiliated with AFGE, and became a member of the AFGE.  Downing Decl., ¶ 6.  From 1976-

1977, Castellano served in Local 1778 as a union steward, chief union steward, vice president, executive vice president, and president. Downing Decl., ¶ 7. In 1993, Castellano took a leave of absence from his civilian job in order to work as an AFGE National Representative. Downing Decl., ¶ 8. Castellano continued to pay full union dues to AFGE Local 1778, and the local continued to pay, and AFGE continued to accept, "per capita taxes" on behalf of the local's members, including Castellano. Downing Decl., ¶ 9.[1] In 1994, Castellano quit his civilian job but continued as an AFGE Representative and continued to pay full dues. Downing Decl., ¶ 10. Although he was no longer a government employee, Castellano could and did maintain his AFGE membership in accordance with Article III, sections 1(a) to 1(c) of the AFGE Constitution. See Downing Decl., ¶¶ 32-33.

Castellano retired from the Air Force reserve after twenty years of service. Downing Decl., ¶ 11. According to Castellano, Local 1778 president, Michael Horahan, contacted him in 1996 and recommended that his dues be reduced to the level of a retirees' dues, which was less than the dues for active members. Downing Decl., ¶ 12 . Thus, in 1996, Castellano began paying dues at the reduced rate charged to retirees. Downing Decl., ¶ 12. However, Castellano was not eligible to pay retiree dues because he had not retired from a civilian federal job but from military service. Downing Decl., ¶ 13. Nonetheless, AFGE accepted the retiree dues from Castellano. Downing Decl., ¶ 14. In 2004, Castellano began paying full dues and he has been paying full dues since 2004. Downing Decl., ¶ 15. AFGE did not object when Castellano's

---

[1] According to AFGE, "'dues,' which are paid to the local, are distinguishable from 'per capita tax,' which is paid to the National AFGE." See Downing Decl., at ¶ 19, Exh. 36, p. 8. AFGE reported that the dues paid to the local by each member is $15.50 per pay period for active (non-retiree) members. Id. The per capita tax for all AFGE active members is $17.50 per month. Id.

local, Local 1778, changed his dues status in 2004 to a full dues paying member. Downing Decl., ¶ 17. On March 4, 2005, Vincent Castellano paid $637.92 to Local 1778, which represented the difference in retiree and active member dues for the previous two years. Downing Decl., ¶ 16. In March 2005, Local 1778, the local union to which Vincent Castellano belongs, paid to the AFGE and the AFGE accepted $261.00 in "per capita taxes" on behalf of Mr. Castellano. Downing Decl., ¶ 19. Notwithstanding these facts, AFGE determined that Mr. Castellano's failure to pay full dues for the entire three years prior to the nominations for the 2005 election did not satisfy the three-year good standing requirement and he was ruled ineligible to run for office in 2005. Downing Decl., ¶ 23.

Charges were never brought against Castellano for failing to pay full dues. Downing Decl. ¶ 36. Similarly, AFGE had taken no action to expel or suspend Castellano from membership in the AFGE, pursuant to the expulsion or the suspension provisions in its constitution. Downing Decl. ¶ 38. Vincent Castellano has not withdrawn from membership in the AFGE. Downing Decl. ¶ 39. In 2006, AFGE issued Castellano a membership card for the time period 2006-2009. Downing Decl. ¶ 40. At the time of the 2008 election, Vincent Castellano had been paying full dues on a timely basis since 2004. Downing Decl., ¶ 25.

On March 19, 2008, Vincent Castellano attempted to run for union office in the instant challenged 2008 election. Downing Decl. ¶ 41. However, AFGE ruled Vincent Castellano ineligible for candidacy in 2008 on the basis that Mr. Castellano's payment of retiree dues caused a break in membership and a loss of membership status that can only be repaired by Castellano's regaining federal employment for three consecutive years and paying full member dues for that period. Downing Decl., ¶ 29. Further, on March 28, 2008, AFGE advised Vincent Castellano

7

that his failure to maintain correct dues status as an AFGE member rendered him permanently ineligible to run for national office in AFGE.  Downing Decl. ¶ 42.  On April 9, 2008, AFGE ruled Vincent Castellano ineligible to run for District 2 National Vice President in the May 17, 2008 election.  Downing Decl. ¶ 43, Exh. 45.  On approximately May 8, 2008, AFGE dropped Castellano from membership, after he filed a complaint with the Department challenging his ineligibility for AFGE office.  Downing Decl. ¶ 44.[2]  As of May 10, 2008, Castellano had been paying full dues on a timely basis since 2004, and he is current in those payments as of March 9, 2010.  Downing Decl. ¶ 45.  On May 17, 2008, AFGE held its regularly scheduled periodic election for District 2 National Vice President, which election was subject to Title IV of the LMRDA.  Downing Decl. ¶ 46.   The facts above, and outlined in greater detail below, demonstrate that Castellano was a member in good standing in AFGE and under the LMRDA.  Although he satisfied the AFGE requirements for officers, he was improperly denied the right to be nominated and run for a national AFGE Office in violation of 29 U.S.C. § 481.  See Downing Decl. ¶¶ 31, 44, 45.

1.    **Castellano Satisfied the LMRDA Definition of Member Since He Fulfilled the AFGE Constitutional Requirements for Membership, Did Not Voluntarily Withdraw From Membership, And Was Not Expelled or Suspended From Membership After Appropriate Proceedings.**

---

[2] Castellano declared his candidacy in a March 19, 2008 letter to the AFGE National Secretary-Treasurer. See Downing Decl. ¶ 41, Exh. 42.  AFGE Counsel detailed the reasons why Castellano was "permanently ineligible" in a March 28, 2008 letter.  Downing Decl., ¶ 42, Exh. 43.  In a letter dated April 9, 2008, the AFGE President sent a final decision to Castellano denying his candidacy.  Downing Decl., ¶ 43, Exh. 45.  Having exhausted his internal union remedies, Castellano filed a timely complaint with the Department of Labor, pursuant to section 402(a)(1) of the LMRDA, 29 U.S.C. § 482(a)(1), on April 11, 2008.  Downing Decl. ¶ 43, Exh. 44.

**a.      Castellano fulfilled the requirements for membership as set forth in the AFGE constitution.**

A union is free to prescribe in its bylaws and constitution the requirements for admission to membership.  See, e.g., Ricks v. Simons, Civ. No. 90-0249, 1990 WL 116834 *2 (D.D.C. July 30, 1990); Hughes v. Local No. 11, International Association of Ironworkers, 287 F.2d 810 (3d Cir. 1961).  A person must meet the requirements contained in those documents, since a particular union may have internal rules of membership.  Erkins v. Bryan, 663 F.2d 1048, 1052 (11th Cir.1981), cert. denied, 459 U.S. 989 (1982).

Here, the Department's investigation disclosed that Castellano fulfilled the requirement for membership in the AFGE in accordance with Article III, sections 1(a) to 1(c) of the AFGE Constitution.   With respect to membership,  Article III, of the AFGE Constitution provides:

> Section 1(a).  All persons of the following classes, without regard to race, creed, color, national origin, sex, age, political affiliation, handicapped condition, marital status, sexual orientation, or preferential or nonpreferential civil service status, excepting those over whom jurisdiction has been granted to other national or international unions by the AFL-CIO, and excepting officers of unions not affiliated with the AFL-CIO, shall be eligible for full membership in this Federation.
>
> Section 1(b).  All employees of the United States Government and any of its instrumentalities of whatever nature, including military personnel of the armed forces, and of the District of Columbia, and all other persons providing their personal services indirectly to the United States Government are eligible for membership in this Federation.
>
> Section 1(c).  Any person who at the time of being

9

> separated without prejudice from employment
> covered by subsection (b) was a member in good
> standing of any local is eligible to continue membership
> in this Federation.

Downing Decl., at ¶ 32, Exh. 37.

Because Castellano had been a United States Government employee for nearly twenty years, and separated without prejudice from that employment, he complied with Article III, Sections 1(a) and 1(c) of the AFGE Constitution. Downing Decl., at ¶¶ 5 and 8. Despite the fact that Castellano fulfilled the constitutional requirement for membership (see Downing Decl., at ¶ 33), the AFGE continues to refuse to recognize him as a "member in good standing." See Dkt. 3, at ¶ 8. AFGE takes the position that, because Castellano paid retiree dues from 1996 to 2004, when he was required to pay dues, he had a break in membership and, therefore, is no longer a member. See Downing Decl., at ¶ 29, Exh. 36. However, the membership provision in the AFGE Constitution does not support AFGE's claim nor does the claim find support in any other provision of the Constitution. See Downing Decl., at ¶ 30, Exh. 37. Notwithstanding AFGE's position, the record is clear that Castellano fully met the membership requirements contained in the AFGE Constitution. See Downing Decl., at ¶¶ 5, 8, 30, 31.

Several courts have considered the question whether a person can be a "member" within the meaning of the LMRDA if such person has "fulfilled the requirements for membership," but is not recognized by the labor organization as a member. The prevailing view, based on the language and purpose of the LMRDA, is that the definition of "member," within section 3(o), is not limited to those persons who are recognized as members by the union. See, e.g., Thompson v. Office and Professional Employees, 74 F.3d 1492, 1555 (6th Cir. 1996); Phelan v. Local 305,

10

United Association of Journeymen, 973 F.2d 1050, 1057 (2d Cir. 1992); Department of Labor v. Aluminum, Brick and Glass Workers Int'l Union, Local 200, 941 F.2d 1172, 1177 (11th Cir.1991); Building Material and Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 508-09 (9th Cir.1989); Alvey v. General Elec. Co., 622 F.2d 1279, 1284-85 (7th Cir.1980); Hughes v. Local No. 11 of International Association of Iron Workers, 287 F. 2d 810, 815 (3d Cir. 1961). The Act provides rights to those persons who have fulfilled the requirements of membership, i.e., those who are members in substance. See 29 U.S.C. § 402(o). In Hughes, the court stated:

> Congress did not . . . limit the protection [of the LMRDA] to those who have been admitted to membership in a labor organization and who are recognized as members by that organization. Indeed, it provided that equal rights and privileges be secured to any person who has fulfilled the requirements of membership. Thus, the Act's protection is extended to those who are everything that members are, to those who are in substance members, despite the fact that the officials of the particular labor organization have not [given] recognition [to such membership].

Hughes, 287 F.2d at 815.

Thus, a person who has met the requirements for membership in a union, but is not recognized by that union as a member, is a member in substance entitled to all the rights and privileges accorded by the LMRDA to those individuals. See id. In the instant case, the Department's investigation established that Castellano fulfilled the requirements for membership in the AFGE. Downing Decl., at ¶¶ 5-6, 9, 11, 15-26, 23-25, 28, 33, 36, and 38-39.

        **b.**     **Castellano has not voluntarily withdrawn from membership, and the AFGE has not expelled or suspended him from membership after appropriate proceedings.**

11

Once a person fulfills the requirements for membership in a union, that person remains a member, pursuant to section 3(o) of the LMRDA, until one of two things occurs: (1) the member voluntarily withdraws from membership or (2) the union expels or suspends the member from membership after appropriate proceedings. 29 U.S.C. § 402(o). Neither event occurred in the instant case. Castellano has not voluntarily withdrawn from membership in the AFGE. Downing Decl., at ¶ 39. The AFGE Constitution does not provide for the automatic suspension or expulsion of members for delinquencies in the payment of dues or the failure to pay the correct dues. See Downing Decl., at ¶ 20, Exh. 37. In fact, Article XXIII of the AFGE Constitution provides detailed procedures for bringing charges against an AFGE local's members and officers. See Downing Decl., at ¶ 37, Exh. 37. Despite the fact that Castellano paid retiree dues for more than four years, charges were never brought against him for failing to pay full dues. Downing Decl., at ¶¶ 12-14, Exh. 3 and 7; ¶ 36. He has continued to pay, and the union has continued to accept, his dues. Downing Decl., at ¶¶ 9-10.

Article XXIII of the AFGE Constitution also outlines the procedures for suspending or expelling an AFGE local's members. Downing Decl., at ¶ 37. However, AFGE took no steps to suspend or expel Castellano. Downing Decl., at ¶ 38. Inasmuch as Castellano fulfilled the constitutional requirements for membership and has not withdrawn from membership or been suspended or expelled from membership by the AFGE, he was a "member" of the AFGE, for purposes of section 3(o) of the LMRDA, at the time of the 2008 election. Downing Decl., at ¶¶ 5-6, 9, 11, 15-26, 23-25, 28, 33, 36, and 38-39.

As a member of AFGE, for purposes of the LMRDA, Castellano was entitled to all the rights and privileges accorded by the LMRDA to union members, including the right to be a

candidate for union office provided he met reasonable eligibility criteria. See 29 U.S.C. § 481(e). The fact that the AFGE refuses to recognize Castellano as a member under its own rules has no relevance to the statutory definition of "member" pursuant to the LMRDA. Donovan v. United Counties Carpenters Council, 561 F.Supp. 791 (N.D. Oh. 1983), aff'd, 735 F.2d 1363 (6th Cir. 1984) (union rules have no relevance to the statutory definition of "member in good standing," as that term is defined in the LMRDA).

Further, AFGE's argument that Castellano is not a member in good standing is inconsistent with its own actions toward Castellano. For example, from 1996 to 2004, when Castellano was paying retiree dues, AFGE accepted the dues. See Downing Decl., at ¶¶ 12, 14. AFGE never notified Castellano that he was paying incorrect dues, never notified Castellano that he was delinquent in paying full dues, nor requested that he pay back dues. Downing Decl., at ¶ 14. Furthermore, as outlined above, Castellano was never suspended or expelled from membership for paying retiree dues, instead of full dues. Downing Decl., at ¶ 38. It was not until after Castellano filed a complaint with the Department challenging his ineligibility for AFGE office, that AFGE dropped Castellano from membership on approximately May 8, 2008. Downing Decl., at ¶ 44, Exh. 46.

In addition, AFGE allowed Castellano to change his dues status in 2004, from retiree to full status, without informing him that he was no longer a member. See Downing Decl., at ¶ 17, Exh. 33. As a result of this change in status, Castellano paid increased dues that AFGE accepted. Downing Decl., at ¶¶ 14-17. In 2006, AFGE issued Castellano an AFGE membership card, for the time period of 2006-2009. Downing Decl., at ¶ 40. Local 1778, the AFGE local union to which Castellano belongs, continued to remit, and AFGE continued to accept, "per capita taxes"

13

on behalf of Castellano. Downing Decl., at ¶ 19. Although AFGE was aware as early as 2005

that Castellano was not paying the correct dues (see Downing Decl., at ¶¶ 17-19), it was not until

April 2008, after Castellano requested confirmation from the AFGE concerning his eligibility to

seek nomination for the office of District 2 National Vice President (see Downing Decl., at ¶ 43,

Exh. 44 and 45), that AFGE took the position that Castellano's payment of retiree dues resulted

in a break in membership and, ultimately, a loss of membership status in the AFGE. Downing

Decl., at ¶ 29. Even though the AFGE refuses to recognize Castellano as a member, the facts

substantially demonstrate that Castellano fulfilled the requirements for membership in the AFGE

and, thus, he was a member of the AFGE for purposes of the LMRDA.   Downing Decl., at ¶¶ 5-

6, 9, 11, 15-26, 23-25, 28, 33, 36, and 38-39. Further, the AFGE treated Castellano as a member

of the union. See Downing Decl., at ¶ 25, 38, 40. Therefore, AFGE's failure to recognize

Castellano as a member should not operate to defeat his membership status in the AFGE. See

Downing Decl., at ¶ 29, Exh. 36.

     **2.**       **Castellano Met The Candidacy Eligibility Requirements For AFGE Office As Set Forth In The AFGE Constitution**

It is generally recognized that labor organizations may have a legitimate institutional

interest in prescribing minimum standards for candidacy and office holding. See 29 C.F. R. §

452.35. However, once a union prescribes such standards in its constitution, union officials do

not have the authority to ignore unambiguous provisions of their constitution; they must enforce

such provisions in accordance with their plain meaning. See Nichols v. Dole, 136 L.R.R.M.

2133, 2136 (D.S.C. 1990), citing, Local 317 v. National Post Office Mailhandlers, 696 F.2d

1300,1302 (11th Cir. 1983) (plain language of constitution must be followed by both union and

14

court); <u>Black v. Transport Workers Union of America</u>, AFL-CIO, 454 F. Supp. 813, 824, aff'd, 594 F.2d 851 (2d Cir. 1978) (when the provisions of a union's constitution and bylaws are clear and explicit, their terms may not be ignored). <u>See</u> <u>also</u> <u>Brock v. Inter. Assoc. of Machinists, Local Lodge 851</u>, Civ. No. 84-C-5299, 1985 WL 3616 (N.D. Ill. November 04, 1985) (denying a union member in good standing the right to run for office contravenes section 401(e)'s mandate that every union member in good standing shall be eligible to be a candidate).

Article VII, section 1(a) of the AFGE Constitution sets forth the candidacy eligibility requirements for AFGE office. Downing Decl., at ¶ 20, Exh. 37. Article VII, section 1(a) provides as follows:

Officers

> Section 1(a). No person shall be a candidate for, or be elected to, national office unless he or she has been a governmental employee for three consecutive years, and also has been a member in good standing of the Federation for the three consecutive years immediately prior to the date of nomination for the office being sought.

<u>Id</u>.

Here, Castellano worked as a civilian employee of the United States Air Force for almost twenty years. Downing Decl., at ¶ 5. According to AFGE, their interpretation of the three-year government service requirement is that it can be met at any time, and is not limited to the three years immediately prior to nomination for a union office. <u>See</u> Downing Decl., at ¶ 21, Exh. 36. Therefore, Castellano met the first candidacy eligibility requirement under Article IV, section 1(a) of the AFGE Constitution, namely, he was "a governmental employee for three consecutive years." Downing Decl., at ¶ 20, Exh. 37; ¶ 24, Exh. 36.

15

With regard to the second candidacy eligibility requirement, Article VII, section 1(a) of the AFGE Constitution does not specifically define what constitutes "good standing." See Downing Decl., at ¶ 20, Exh. 37. However, the AFGE Election Manual provides as follows:

> Good Standing: The good standing of a member is a prerequisite to being eligible to hold office, as well as to being permitted to vote. Obviously, to be in good standing a member must be current in dues. Locals governed by the standard local constitution require a member who pays dues directly to pay in advance (quarterly, semi annually or annually). Other locals by operation of their constitution may also require the same…

Downing Decl., at ¶ 26, Exh. 39.

Thus, based on AFGE's interpretation, the good standing requirement is met if a member is current in his or her dues payments. Downing Decl., at ¶ 27, Exh. 36. Based on May 17, 2008, the date of the challenged election, the three-year qualifying period to determine if a member has been in good standing for three consecutive years, covered May 2005 through April 2008. See Downing Decl., at ¶ 22, Exhs. 36, 37. Castellano has been paying his full monthly membership dues on time since 2004, more than four years prior to the May 17, 2008 election. See Downing Decl., at ¶¶ 15, 18, 25, 28. Therefore, he not only met the good standing requirement in the AFGE Election Manual (Downing Decl., at ¶ 28, Exhs. 36, 10-31), but, consistent with AFGE's interpretation, he also met the second eligibility requirement under Article IV, section 1(a) of the AFGE Constitution, namely that he be "a member in good standing of the Federation for the three consecutive years immediately prior to the date of nomination for the office being sought." See Downing Decl., at ¶ 25, Exhs. 37, 10-31. Furthermore, Castellano met the requirements of a "member in good standing" under the LMRDA. See 29 U.S.C. § 402(o).

16

AFGE's argument that Castellano's failure to pay his full dues continues to make him ineligible to run for office, and deprives him of good standing to run for AFGE office, is contrary to the LMRDA.  Specifically, AFGE's determination that Castellano's failure to pay full dues from 1996 to 2004, by erroneously paying retiree dues, resulted in the loss of his "good standing" status, and makes him permanently disqualified from membership or running for any future national office position (see Downing Decl., at ¶ 29, Exh. 36, p. 2), is contrary to the LMRDA. See 29 U.S.C. § 402(o).  The Secretary of Labor's interpretative regulation states as follows:

> (b) Continuity of good standing.  A requirement of continuous good standing based on punctual payment of dues will be considered a reasonable qualification only if (1) it provides a reasonable grace period during which members may make up missed payments without loss of  eligibility for office, and (2) the period of time involved is reasonable. What are reasonable periods of time for these purposes will depend upon the circumstances.

29 C.F.R. §452.37(b).

This regulation has been applied in a number of cases.  See also Donovan v. Graphic Arts Union, 118 LRRM 2092 (C.D. Ill. 1984) (five-year continuous good standing requirement held unreasonable); Marshall v. Painters, Local 1010, 1980 WL 2143 (M.D. Fla. 1980) (three-year continuous good standing requirement held unreasonable).

In essence, AFGE purports to impose at least a four-year good standing requirement for eligibility to run for union office with no grace period for making up missed payments.  See Downing Decl., at ¶ 29, Exh. 36.  This requirement is unreasonable under the LMRDA and should not operate to defeat Castellano's eligibility to run for office.  See 29 C.F.R. §452.37(b). Because Castellano was a member of AFGE and met the candidacy eligibility requirements for

AFGE office within the plain meaning of article VII, section 1(a) of the AFGE Constitution (Downing Decl., at ¶ 24), he had a right, pursuant to section 401(e) of the LMRDA, to be a candidate for AFGE office.  See 29 U.S.C. §481(e).  AFGE's denial of that right (Downing Decl., at ¶ 42, Exh. 43), violated the mandate under section 401(e) of the LMRDA that "every member in good standing shall be eligible to be a candidate."  29 U.S.C. § 481(e).

    **3.      AFGE's Claim That Castellano's Reduced Dues Payment Caused Him to Lose Membership And To Make Him Ineligible for Union Office, Seeks to Impose A Requirement Not Embodied in the AFGE Constitution And Is Therefore An Unreasonable Candidacy Requirement that Violates Section 401(e) of the LMRDA, 29 U.S.C. § 481(e).**

In addition to the mandate in section 401(e) of the LMRDA, that requires members in good standing to be afforded an opportunity to be candidates, this provision further provides that minimum standards for candidacy and office holding in the union are subject to "reasonable qualifications."  29 U.S.C. § 481(e).[3]  The question whether a candidate qualification is reasonable is a matter that is not susceptible to precise definition, and will ordinarily turn on the facts in each case.  See 29 C.F.R. § 452.36(a).  Nevertheless, a union's authority to limit the rights of its members to run for office is narrow.  The Supreme Court has specifically stated that the "reasonable qualifications" language of section 401(e) should not be read broadly because restrictions on the right to run for office limit the pool of opposition candidates and, thus, have an anti-democratic effect.  See Wirtz v. Hotel, Motel and Club Employees, Local 6, 391 U.S. at 499. See also Chao v. Bremerton Metal Trades Council, 294 F.3d 1114, 1121-22 (9th Cir. 2002); 29 C.F.R. § 452.36.  Thus, a variety of eligibility requirements for union office have been struck

---

[3] Section 401(e) of the LMRDA reads in relevant part, "every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 and to reasonable qualifications uniformly imposed). . . ."  29 U.S.C. § 481(e).

down under section 401(e). See e.g., Wirtz v. Hotel Employees, 391 U.S. at 492 (prior office holding); Chao v. Amalgamated Transit Union, AFL-CIO, CLC, 141 F.Supp.2d 13 (D.D.C. 2001) (meeting attendance rule); Herman v. Local 1011, Steelworkers, 207 F.3d 924 (7th Cir. 2000) (meeting attendance rule); Donovan v. Sailors Union of the Pacific, 739 F.2d 14266 (9th Cir. 1984), cert. denied, 471 U.S. 1004 (1985) (three-year membership). As the court in Donovan v. Local Union No. 120, Labor International Union, 683 F.2d 1095, 1102 (7th Cir. 1982), observed, "any qualifications unduly interfering with a free choice of candidates are at cross-purposes with [Title IV of the LMRDA] and are not 'reasonable.'"

A candidacy requirement needs to not only be substantively reasonable, but also the manner of its imposition must be reasonable. 23 C.F.R. § 452.53. A qualification is not reasonable if it is arbitrarily imposed on the membership. Id; see Local 3489, United Steelworkers Union of Am .v. Usery, 429 U.S. 305, 311 (1977). Limitations on the right to hold office must reflect the judgment of the members of the union. 23 C.F.R. § 452.36(a); see also Donovan v. Sailors' Pacific Union, 739 F.2d 1426, 1429 (9th Cir. 1984). A qualification - even an otherwise reasonable qualification - may not be imposed by fiat by union officers, or their delegates. King v. Randazzo, 346 F.2d 307 (2d. Cir. 1965); Agola v. Hagner, 678 F.Supp. 988 (E.D.N.Y. 1987). Rather, the members whose rights are restricted must in some form give legitimacy to the limitation through the channels set forth in the constitution and bylaws of the union. See King v. Randazzo, 346 F.2d at 309. For this reason, a qualification on the right to run for office must be embodied in the constitution of the union, its bylaws, or some other

19

document of equal authority.  See 29 C.F.R. § 452.53; Downing Decl., at ¶ 31.[4]  Thus, while the

Secretary's interpretative regulations recognize the right of a labor organization to prescribe

minimum standards for candidacy and office holding (see 29 C.F.R. § 452.35), the regulations

also make it clear that a candidacy qualification must be enacted, not imposed:

> A qualification which is not part of the
> constitution and bylaws or other duly enacted
> rules of the organization may not be the basis
> for the denial of the right to run for office,
> unless required by Federal or State law.

29 C.F.R. § 452.53.[5]

Courts have embraced this approach.  See, e.g., Hodgson v. New Orleans Dray Clerks,

Civ. No. 70-3328, 1972 WL 751, at 1. (E.D. La. Jan. 5, 1972) (union violated section 401(e) of

---

[4] Section 452.53 provides, in pertinent part:

Application of qualifications for office.

Qualifications for office which may seem reasonable on their face may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way. An essential element of reasonableness is *adequate advanced notice* to the membership of the precise terms of the requirement (emphasis added).
...

23 C.F.R. § 452.53.

[5] This regulation is one of several that interprets the statutory mandate that eligibility restrictions on candidates for office be "reasonable qualifications." 29 U.S.C. § 481(e).  In applying a related regulation also interpreting this statutory term, the Ninth Circuit noted that, "[a]lthough this regulation interpreting reasonableness is not binding on us, we are persuaded it is useful in applying [29 U.S.C.] § 481(e)." Bremerton Metal Trades Council, 294 F.3d at 1122, n.5.  As a general matter, the Courts of Appeals have given the interpretative regulations considerable weight.  See, e.g., Brock v. Writers Guild of American, West, Inc., 762 F.2d 1349, 1357 (9th Cir 1985); BLE Int'l Reform Committee v. Systma, 802 F.2d 180, 190 (6th Cir. 1986); Donovan v. Nat'l Transient Division, Int 'l Bhd. of Boilermakers, 736 F.2d 618 (10th Cir. 1984), cert. denied, 469 U.S. 1107(1985); Alvey v. General Electric Co., 622 F.2d 1279, 1286 n.7 (7th Cir. 1980).

the LMRDA in that it applied a candidacy requirement not embodied in its constitution and bylaws); Wirtz v. Local 559, United Bhd of Carpenters, 61 L.R.R.M. 2618, 2622 (W.D. Ky. 1966) ("Reasonable qualifications which may be imposed under section 401 (e)of the Act must be spelled out in the union constitution and bylaws so that all potential candidates and their supporters will have notice of them."). *Compare* Martin v. Local 101, Transport Workers Union, AFL-CIO, No. CV 91-1871 (RJD), 1992 WL 394175, at 8 (E.D.N.Y. Dec. 9, 1992) (union violated section 401(e) of the LMRDA in that the union could point to no provision in its constitution or bylaws, which incorporates the candidacy rule used as the basis to disqualify member's candidacy. The prevailing view is that "reasonable qualifications" for candidacy must take the form of union constitutions or other duly enacted rules. See e.g., Wirtz v. Local 559, United Bhd of Carpenters, 61 L.R.R.M. 2618, 2622 (W.D. Ky. 1966); New Orleans Dray Clerks, Civ. No. 70-3328, 1972 WL 751, at 1; Local 559, United Bhd of Carpenters, 61 L.R.R.M. at 2622; Local 101, Transport Workers Union, AFL-CIO, 1992 WL 394175, at 8.

A restriction on the right to run for office that fails to meet this standard, by definition, is not a "reasonable qualification" under the LMRDA. Hodgson v. Longshoremen, Local 1655, 79 L.R.R.M. 2893 (E.D. La.1972) (holding union's meeting attendance requirement to be void in part because "it was not officially embodied in its constitution and bylaws."); Hodgson v. New Orleans Dray Clerks, Civ. No. 70-3328, 1972 WL 751, at 1. (E.D. La. Jan. 5, 1972) (union violated section 401(e) of the LMRDA in that it applied a candidacy requirement not embodied in its constitution and bylaws); Wirtz v. Local 559, United Bhd of Carpenters, 61 L.R.R.M. at 2622 ("Reasonable qualifications which may be imposed under section 401 (e)of the Act must be

21

spelled out in the union constitution and bylaws so that all potential candidates and their supporters will have notice of them.").

AFGE imposed an election rule on Castellano's candidacy that was not a part of its Constitution. See Downing Decl., at ¶ 30, Exh. 37. Specifically, AFGE's Constitution does not contain a provision that reduced dues result in a break in membership, such that membership is lost and one is permanently ineligible to run for office. Id. The union is not able to point to any rule of equal authority that incorporates the alleged rule. See Exhibit A, *Defendant's Response to Plaintiff's Second Request for Production of Documents*, at ¶ 1, p. 1; ¶¶ 2-3, pp. 9-10. Thus, by definition, such a rule was an unreasonable qualification, within the meaning of section 401(e) of the LMRDA and, therefore, unenforceable. See 29 C.F.R. § 452.53. AFGE, however, enforced this rule against Castellano. Downing Decl., at ¶ 29, Exh. 36. Such enforcement resulted in Castellano being disqualified from seeking AFGE office. Id. Therefore, AFGE violated section 401(e) of the Act not only in denying Castellano, a member in good standing of the AFGE, a right to run for AFGE office, but also by imposing an unreasonable qualification on his candidacy, in violation of section 401(e). See 29 U.S.C. 481(e).

**B.      The Denial of Castellano's Candidacy in Violation of Section 401(e) of the LMRDA May Have Affected the Outcome of AFGE's 2008 Election For District 2 Vice President.**

Section 402 of the LMRDA requires the district court to declare a contested election void and order a new election under government supervision if the Secretary proves that a violation of section 401 "may have affected the outcome of the election." 29 U.S.C. § 482(c). See e.g., Hotel Employees, Local 6, 391 U.S. at 505-09. The Supreme Court has held that the Secretary's proof of a section 401 violation establishes a prima facie case that the violation may have affected the

22

outcome of the election, shifting the burden to the union to prove that the violation did not affect the results. See id., at 506-07. To overcome this burden, the union must prove by specific and concrete evidence that the outcome could not have been affected. Id.

Here, the Secretary has proven AFGE's violations of section 401(e) of the LMRDA. AFGE violated section 401(e) when it disqualified Vincent Castellano, a member in good standing, who had met the candidacy eligibility requirements set forth in the AFGE Constitution, from being nominated to and a candidate for District 2 National Vice President. See 29 C.F.R. § 452.53; Downing Decl., at ¶ 42, Exh. 43. In disqualifying Castellano, AFGE imposed an unreasonable qualification on his candidacy, in violation of section 401(e). See Downing Decl., at ¶¶ 30-31, 42. Had AFGE not imposed this unreasonable requirement and disqualified Castellano, he may have been nominated for and possibly elected to AFGE office. See Downing Decl., at ¶ 46, Exh. 48.

As a result of the Secretary's proven violations, AFGE has an insurmountable burden to provide the court with specific and concrete evidence that the violations of section 401(e) of the Act did not affect the outcome of the challenged election. See Hotel Employees, Local 6, 391 U.S. at 508. In this case, there were only two candidates for District 2 National Vice President - Derrick Thomas, the incumbent District 2 National Vice President and winning candidate, and Don Hale, an opposition candidate. See Downing Decl., at ¶ 46, Exh. 48. Because it is not possible to know what would have transpired during the challenged election or to ascertain what the outcome of the election may have been had there been no violations, any evidence offered by the AFGE about what would have happened in an untainted election for District 2 National Vice President is "pure conjecture." See Hotel Employees, Local 6, 391 U.S. at 508. Therefore, the

23

AFGE will not be able to carry its burden of proof that the violations did not affect the outcome of the election.

## V.  CONCLUSION

Based on the foregoing facts and arguments, it is clear that no genuine issue of material fact exists; therefore, the Secretary is entitled to summary judgment as a matter of law. Wherefore, Plaintiff prays that her Motion for Summary Judgment be granted and an Order entered declaring Defendant AFGE's May 17, 2008 election for District 2 National Vice President null and void and ordering a new election for that office, including nominations, to be conducted immediately under Plaintiff's supervision.

Respectfully submitted,

_____/s/_____
RONALD C. MACHEN JR., DC BAR # 447889
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR # 434122
Assistant United States Attorney


_____/s/_____
ROBIN M. FIELDS, DC BAR # 461601
Special Assistant United States Attorney
555 Fourth St., N.W., Room E4817
Washington, D.C. 20530
(202) 514-7139
(202) 514-8780
robin.fields@usdoj.gov

Of Counsel:
M. Patricia Smith, Solicitor of Labor
Katherine E. Bissell, Associate Solicitor for Civil Rights and Labor-Management

Sharon E. Hanley, Counsel for Labor-Management Programs
Willie B. White, Senior Attorney
U.S. Department of Labor
Office of the Solicitor
Civil Rights and Labor-Management Division
200 Constitution Avenue NW, Room N-2474
Washington DC 20220