UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HILDA L. SOLIS,
 Secretary of Labor,
 United States Department of Labor,

**Plaintiff,**

v.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,

**Defendant.**

Civil Action No.  08-1394 (JDB)

## MEMORANDUM OPINION

Plaintiff Hilda L. Solis, Secretary of Labor, brings this action on behalf of complainant Vincent Castellano against defendant American Federation of Government Employees ("AFGE") alleging a violation of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 481-84) ("LMRDA").  Plaintiff claims that the AFGE violated the LMRDA by preventing the complainant from running for office as AFGE National Vice President, District 2, in May 2008.  The Secretary requests that the Court declare the 2008 election void and order the AFGE to conduct a new election under her supervision.  The AFGE has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56.  The Secretary has moved for summary judgment pursuant to Rule 56.  For the reasons discussed below, the Court will grant plaintiff's motion for summary judgment and deny defendant's motion to dismiss or, in the alternative, for summary judgment.

## BACKGROUND

Plaintiff brings this action in her capacity as Secretary of Labor under section 402(b) of Title IV of the LMRDA, 29 U.S.C. §482(b). Defendant is, and at all times relevant to this action has been, a labor organization within the meaning of 29 U.S.C. §§402(i), 402(j), and 481(a). Compl. ¶ 6; Ans. ¶ 6; Def's Mot. to Dismiss or in the Alt. for Summ. J. ("Def's Mot.") at 8. The Secretary asserts that the AFGE violated Title IV of the LMRDA when it declared the complainant, Vincent Castellano, ineligible to run for national office in the May 2008 election. Compl.¶ 16. According to the AFGE National Constitution, "all employees of the United States Government and any of its instrumentalities of whatever nature, including military personnel of the armed forces, and of the District of Columbia, and all other persons providing their personal services indirectly to the United States Government are eligible for membership in this Federation." AFGE National Constitution ("AFGE Const."), Article III, Sec. 1(b).

Vincent Castellano worked as a civilian for the United States Air Force from 1974 to 1994. Pl's Opp'n to Def's Mot. to Dismiss ("Pl's Opp'n") at 2. In January 1975, he joined a local union affiliated with AFGE, Local 1778, and became a member of both AFGE and Local 1778. Pl's Opp'n at 2. In 1993, Mr. Castellano took a leave of absence from his civilian role in the Air Force to serve as an AFGE National Representative, but continued to pay full active membership dues. Pl's Opp'n at 2; Def's Mot. at 8. He permanently left, but did not retire from, his civilian Air Force job in 1994 and again continued to pay full active membership dues until 1996. Def's Mot. at 8; Pl's Opp'n at 2. In 1995, Mr. Castellano retired from the Air Force after twenty years of service. Pl's Opp'n at 3.

Mr. Castellano then requested in 1996 that the union change his status from that of full active member to a retiree member and he subsequently began paying the reduced dues rate charged to retirees. Def's Mot. at 8; Pl's Opp'n at 3. Mr. Castellano was not eligible for retiree status at this or any other time because he had not retired from a federal civilian job. Id. He alleges that Local 1778 president, Michael Horahan, approached him in 1996 and recommended that he change his status to retiree and pay the reduced dues. Pl's Mot. for Summ. J. ("Pl's Mot.")

at 6. Thus, Mr. Castellano paid incorrect dues from 1996 to 2004. Def's Mot. at 8; Pl's Opp'n. at 3. Subsequently, in 2004 he requested that Local 1778 change his status from retiree to active and he began paying full dues at that time. Id.

In March of 2005, Mr. Castellano paid $637.92 to AFGE Local 1778 as a retroactive payment for the period "June 02 thru 03." See Def's Mot. at 9; Pl's Mot. at 7. In turn, AFGE accepted and deposited $261.00 from AFGE Local 1778 in "per capita taxes" on behalf of Mr. Castellano. Id. Then on March 24, 2005, Mr. Castellano announced his candidacy for the office of National Vice President, District 2. Def's Mot. at 9. He was advised by AFGE Deputy Counsel Charles A. Hobbie on March 29, 2005 that he was not eligible for national candidacy because he had paid retiree dues and retiree per capita tax when he was not eligible for such status. See Def's Mot. at 7; Pl's Mot. at 7. Mr. Castellano immediately informed Mr. Hobbie that he was withdrawing his candidacy and Mr. Hobbie responded with a letter stating that Mr. Castellano's "failure to maintain correct dues status as an AFGE member render[ed] [him] permanently ineligible to run for national office." Def's Mot. at 10. Mr. Castellano then appealed the ruling of ineligibility to AFGE's National President, who denied the appeal.

The Department of Labor also denied Mr. Castellano's appeal on October 24, 2005 after finding that AFGE's three year good standing eligibility requirement was reasonable. Id. A letter sent to Mr. Castellano on November 30, 2005 clarified that his appeal was not accepted by the Secretary of Labor because "rules that restrict members from being candidates based on non-payment of dues, meeting attendance or apprentice status may be reasonable if the time period of the restriction does not prevent the member from being a candidate for an inordinate period of time." Pl's Ex. 38 (U.S. Department of Labor Letter from Acting Chief, Division of Enforcement Patricia Fox to Vincent Castellano, November 30, 2005). The letter specifically refrained from commenting conclusively on Mr. Castellano's ability to run for office in future elections. Id.

On March 19, 2008, Mr. Castellano again sought the nomination for the office of National Vice President, District 2. Id. He received letters from AFGE's National Secretary-Treasurer and

General Counsel throughout the month of March informing him that he was ineligible to run for office on the ground that his payment of retiree dues caused a loss in membership status that could only be repaired by Mr. Castellano regaining federal employment for three consecutive years and paying full membership dues for that period.  Id.  On April 2, 2008, Mr. Castellano appealed to the AFGE National President, who responded in a letter dated April 9, 2008 that Mr. Castellano was not eligible to run for national office.  Def's Mot. at 11.  Mr. Castellano then filed a timely complaint with the Secretary of Labor and ultimately the complaint at bar.  Subsequently, AFGE changed its membership records to reflect that Mr. Castellano was no longer a member, retroactively dating back to 1996.  Def's Mot. at 11; Pl's Mot. at 8.  In the election held on May 17, 2008, incumbent Derrick F. Thomas was re-elected National Vice President, District 2.  Def's Mot. at 11; Pl's Opp'n at 4; Pl's Mot. at 23.

## STANDARD OF REVIEW

**I.      Motion to Dismiss**

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court – plaintiff here – bears the burden of establishing that the court has jurisdiction.  See US Ecology,

Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

## II.    Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

**DISCUSSION**

The Secretary brings this action pursuant to Title IV of the LMRDA, 29 U.S.C. § 401. After conducting an initial investigation of Mr. Castellano's complaint, the Secretary concluded that the AFGE violated section 401(e) of the LMRDA, 29 U.S.C. §481(e), during the months prior to the May 2008 election for the office of National Vice President, District 2. Pl's Mot. at 1. The crux of this dispute is whether Mr. Castellano is a member of AFGE according to the language of the LMRDA and AFGE's constitution.

The LMRDA aims to protect union members' rights by seeking a balance between the public interest in ensuring free and democratic union elections and the long standing policy against "unnecessary government intrusion into internal union affairs." Wirtz v. Hotel, Motel, & Club Emps. Union, Local 6, 391 U.S. 492, 496 (1968) (citing Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 470-471 (1968)). The Act seeks to accomplish the Congressional goal of protecting democratic elections and "prevent, discourage and make unprofitable improper conduct by union officials; . . . curb abuse by entrenched union leadership; and . . . encourage challenges to entrenched union leadership." Dole v. Local Union 226, Hotel & Rest. Emps., 718 F. Supp. 1479, 1485 (D. Nev. 1989) (referencing Marshall v. Local 1010, United Steelworkers of Am., 664 F. 2d 144, 150 (7th Cir. 1981)). The LMRDA guarantees members "the right to vote in union elections and referenda (§ 411(a)(1)), to assemble and speak freely (§ 411(a)(2)), to bring suit against the union (§411(a)(4)), to be afforded significant procedural due process rights prior to disciplinary action (§411(a)(5)), and to run for an elective position (§481)." Basilicato v. Int'l Alliance of Theatrical Stage Emps. & Moving Picture Machine Operators of the U.S. & Canada, 479 F. Supp. 1232, 1235 (D. Conn. 1979). Although "Congress emphatically gave unions the primary responsibility for enforcing compliance with the Act, Congress also settled enforcement authority with the Secretary of Labor to insure that serious violations would not go unremedied and the public interest go unvindicated." Glass Bottle Blowers Ass'n, 389 U.S. at 498-99. Ultimately, by "granting unions the power to negotiate members' wages, hours, and conditions of employment

[the government] should insure that the officials of the unions are responsive to the desires of those members they represent. Free and democratic elections are the means by which this end is served." Donovan v. Local Union 70, Int'l Bhd. of Teamsters, 661 F.2d 1199, 1202 (9th Cir. 1981).

The LMRDA clearly establishes that federal district courts have jurisdiction for LMRDA violations. The Act's election enforcement procedure provides that:

> **(a) Filing of complaint; presumption of validity of challenged election.**
>
> A member of a labor organization–
>
> (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
>
> (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,
>
> may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.
>
> **(b) Investigation of complaint; commencement of civil action by Secretary, jurisdiction; preservation of assets**
>
> The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.

29 U.S.C. § 482(a)-(b).

The AFGE argues that the Secretary's complaint should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. The union asserts that Mr. Castellano's failure to pay the correct dues during the period of 1996-2004 and his loss of occupational status as a government employee qualifies as a "fatal" break in union membership. Def's Reply to Pl's Opp'n ("Def's Reply") at 2. The AFGE argues that

the Court lacks jurisdiction because "the statutory grant of jurisdiction in 29 U.S.C. § 482 so clearly depends upon the Plaintiff's having before it a complaint from a *member* of Defendant as a prerequisite." Def's Mot. at 18 (emphasis in original).

The AFGE is correct in noting the jurisdictional element required by the LMRDA; however, it is irrelevant that the AFGE itself does not recognize the complainant as a member. The Secretary can properly proceed by showing that the complainant is a "member in substance," as it is "well settled that compliance with all the requirements for membership in a union, despite the fact that the union officials have not performed the ministerial acts for formal admission, bestows upon that individual all of the LMRDA's protections." Ricks v. Simons, 1990 U.S. Dist. LEXIS 9535, *6 (D.C. July 30, 1990) (referencing 29 U.S.C. § 402(o)); see also Papianni v. Int'l Assoc. of Bridge, etc. Local 11, 622 F. Supp. 1559, 1571 (D.N.J. 1985). Thus, Mr. Castellano satisfies the jurisdictional requirement if it can be shown that he meets the membership qualifications established in the LMRDA and AFGE's constitution and bylaws, whether or not the union recognizes him as a member. And it is clear that Mr. Castellano was eligible for membership in 1975 when he joined the AFGE and that he remained a member in good standing until 1996 when he changed his membership status to retiree. Hence, the issue is whether Mr. Castellano permanently lost his membership status in 1996, as the AFGE claims, by failing to properly pay dues. The court concludes that he did not lose his membership status in 1996 and therefore the AFGE violated Title IV of the LMRDA in refusing to recognize him as a valid candidate for the May 2008 election.

**I.      Defining Membership**

The LMRDA defines a member or a member in good standing as "any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." 29 U.S.C. § 402(o). Although the LMRDA does not expressly establish

membership requirements for unions, "any provision of the constitution or bylaws of any organization which is inconsistent with LMRDA is 'of no force or effect.'"  Basilicato, 479 F. Supp. at 1235.  To determine membership requirements, courts look to the union's constitution and bylaws.  See Ricks, 1990 U.S. Dist. LEXIS at *5-6; see also Hughes v. Int'l Assoc. of Bridge, Structural & Ornamental Ironworkers, 287 F.2d 810, 815 (3d Cir. 1961).

       The AFGE National Constitution states that "all employees of the United States Government and any of its instrumentalities of whatever nature, including military personnel of the armed forces, and of the District of Columbia, and all other persons providing personal services indirectly to the United States Government are eligible for membership in this Federation."  AFGE Const., Art. III, Sec. 1(b).  It is clear that Mr. Castellano was eligible for AFGE Membership in 1974 when he joined the U.S. Air Force as a civilian employee, and thus he was properly admitted as a member of both AFGE and AFGE Local 1778 in 1975.  See Pl's Opp'n at 2.  Moreover, the AFGE Constitution provides that "any person who at the time of being separated without prejudice from employment covered by subsection (b) was a member in good standing of any local is eligible to continue membership in this Federation."  AFGE Const., Art. III, Sec. 1(c).  Hence, when Mr. Castellano took a leave of absence from the Air Force in 1993 and then permanently left his civilian job before reaching retirement in 1994, he was eligible to continue membership in AFGE.  He was a full member in good standing after he left his civil service position during the period from 1994 to 1996 so long as he paid the appropriate membership dues.  Def's Mot. at 8; Pl's Opp'n at 2.

       To be a member in good standing, an individual must be current in monthly dues payments.  See AFGE Const., Art. VII, Sec. 1(a).  The AFGE has adopted thorough procedures governing the actions the union must take in order to suspend, expel, or otherwise discipline a member to ensure that member due process rights are not violated.  See AFGE Const., Art. XXIII.  However, most likely because dues infractions occur more frequently than other disciplinary problems, AFGE handles improper dues payments in a different manner.  A member "may be

dropped if dues are not paid by Tuesday of the last full workweek of the month, provided, however, that a reasonable amount of time after notice of the delinquency is given." AFGE Const., App. B, Art. IV, Sec. 2(b). This requirement puts AFGE in line with the standards found in the LMRDA. See 29 U.S.C. § 411(a)(5) ("No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."). Hence, although the union is not required to provide a delinquent dues member with a formal hearing, it must still provide the member with notice and the opportunity to correct any delinquency before making changes to the individual's membership status.

       Both parties agree that Mr. Castellano paid the incorrect dues between 1996 and 2004, but neither side provides an explanation for why he initially started paying the reduced rate or why it continued for such a prolonged period of time. The AFGE merely claims that Mr. Castellano "should have known" that he was not eligible for retiree status. See Def's Mot. at 32; Def's Reply at 10. The Court finds no merit to this argument as there is no evidence that his requested change was made in a knowingly deceitful or even grossly negligent manner.

       Although the AFGE acknowledges that, according to the AFGE Constitution, notice must be given before a member is dropped, it dismisses the requirement as inapplicable merely because the AFGE was unaware of any problem with Mr. Castellano's payments until he announced his candidacy in 2005. See Def's Mot. at 5. It is true that the AFGE correctly found that Mr. Castellano was ineligible to run for office in 2005 because he did not meet the two-prong requirement for national candidacy. But it took no steps to remove Mr. Castellano from its membership roles or database at that time. And while the AFGE argues that Mr. Castellano was permanently ineligible to run for national office, the union's actions indicate otherwise.

       Mr. Castellano continued to pay full membership dues from 2005 through at least April

2008 and was in fact issued a membership card valid from 2006 through 2009.[1]  Pl's Mot. at 8; Pl's Opp'n at 19.  Assuming the AFGE did not know about the discrepancy in payments until the 2005 election, the Court is troubled by the union's assertion that "the delay of almost three years in correcting the computerized database to remove [Mr.] Castellano from membership" was merely a mistake.  Def's Opp'n at 16-17.  In reality, Mr. Castellano paid dues to Local 1778 for four years prior to the May 2008 election and continued to enjoy the benefits and privileges of membership in AFGE.  To be sure, an international union is not bound by the actions of its affiliates.  See Carbon Fuel v. United Mine Workers of America, 444 U.S. 212, 217-18 (1979); Rodonich v. House Wreckers Union Local 95, 817 F.2d 967, 972-73 (2d Cir. 1987).  But here it is the AFGE that failed to follow its own constitutional mandates.

The AFGE argues that Mr. Castellano is not eligible to continue membership in AFGE because "he qualified for AFGE membership *retention* only so long as he maintained his membership status without a break . . . from the date of his voluntary separation from federal civil service."  Def's Opp'n at 8 (emphasis in original).  Although unions are permitted to have reasonable continuity of good standing membership requirements, such qualifications are reasonable only if "(1) [the union] provides a reasonable grace period during which members may make up missed payments without loss of eligibility for office, and (2) the period of time involved is reasonable."  29 C.F.R. § 452.37(b). Mr. Castellano attempted to make up missed payments in March 2005 by submitting a check covering the June 2002 to June 2003 payment period, but the AFGE dismisses this as irrelevant because the "payment of back dues may correct a member's status and bring the member into 'good standing' for meeting the candidacy qualification *only* when the circumstances of the dues underpayments involve a *mutual* mistake on the part of the member,

---

[1] It is unclear when exactly Mr. Castellano stopped making dues payments.  The AFGE notes in its motion that Mr. Castellano submitted dues payments to Local 1778 in April and May of 2008 and asserts that it applied said amounts to offset existing Local 1778 debits and did not treat them as membership payments.  Def's Mot. at 11.  The Secretary asserts that Mr. Castellano had been paying full dues since 2004 and that he was current in those payments as of March 9, 2010.  Pl's Mot. at 8.  Based on the filings of both parties, the Court finds that Mr. Castellano continued to pay his dues up to the filing of his complaint with the Department of Labor in April 2008.

the local, and AFGE." Def's Opp'n at 16 (emphasis in original).[2]

The AFGE raises minor points throughout its briefs in this case that, while based on nuggets of truth, are ultimately irrelevant in deciding the paramount issue here. The AFGE strenuously argues that Mr. Castellano immediately lost his membership status in 2005 as soon as AFGE learned of the improper dues payments, but this Court does not find any basis in the AFGE Constitution or the language of the LMRDA to support such a conclusion. The Court recognizes that, under the AFGE Constitution, the union could have taken appropriate steps to remove Mr. Castellano from membership for failure to pay proper dues. Ultimately, however, no such action was taken. It is simply counterintuitive that a member could pay full dues for a period of four years without being informed by the union that his membership had been retroactively revoked for an infraction that he was never given the opportunity to correct.

The Court recognizes that the facts of this case are unique and thus understands why both parties raise a myriad of issues in their briefs. The fact that Mr. Castellano paid improper dues over a lengthy period of time is certainly troubling, but without even an implication of impropriety, the Court does not find that this fact alone, without any further action by the union, was sufficient to alter Mr. Castellano's membership status. It is true that the AFGE has very clear rules relating to retirees and those wishing to retain membership status. The AFGE argues that after Mr. Castellano was found ineligible to run for office in 2005, "joining or rejoining AFGE [was] only possible for individuals who are current federal employees and thereby meet the occupational standard of governmental employment." Def's Mot. at 36. The Court agrees with that theory, but finds it is inappropriately applied to Mr. Castellano's situation. If a member were suspended or expelled from the union and he or she was no longer a current federal employee, that individual would not

---

[2] The AFGE repeatedly raised the issue of mutual mistake throughout the many briefs filed in this case. It is quick to dismiss the idea of a mutual mistake with the circular logic that the AFGE could not have been mistaken in accepting the reduced rate dues from Mr. Castellano because it was not aware that there was a problem with the charged rate. The mutual mistake doctrine may not apply to the facts here, but in any event the Court does not need to resolve the issue to decide this case.

be eligible for continuing membership status and thus would need to satisfy the basis for membership found in the AFGE Constitution, namely the occupational standard.  The AFGE cites several internal cases in which it has upheld this principal.  See Def's Mot. at 34-36; Def's Opp'n at 7.  But the Court does not find these cases to be controlling in this case.

Here, AFGE took no action to alter Mr. Castellano's membership status until he filed his complaint with the Secretary of Labor.  It is true that neither the LMRDA nor AFGE's Constitution or bylaws require the union to go through a formal disciplinary process when dealing with members who are delinquent in dues payments.  See 29 U.S.C. § 411(a)(5).  However, members may only be dropped if dues are not paid "provided . . . that a reasonable amount of time after notice of the delinquency is given."  AFGE Const., App. B, Art. IV, Sec. 2(b).  The AFGE's argument that it was unable to provide notice at the time of the failure to pay sufficient dues because the union itself was unaware of the issue is both circular and illogical.

It was not until April 11, 2008, the same day Mr. Castellano filed his complaint, that the AFGE "corrected" its membership records to drop Mr. Castellano, effective retroactively to 1996.  Def's Mot. at 11.  But in altering its membership records, it did not adjust the date of his membership drop to 2005, when AFGE first gained knowledge of the infraction, but instead to nine years earlier (1996) when Mr. Castellano began remitting the wrong dues payments.  See Def's Mot. at 11; Pl's Mot. at 8.  The union highlights the fact that after June 11, 2008, it no longer accepted funds paid by Local 1778 on behalf of Mr. Castellano, but instead credited the amount to Local 1778's account balance as an offset against other debits.  See Def's Mot. at 11-12.  However, the AFGE clearly accepted full payments from Local 1778 on behalf of Mr. Castellano for the four years prior to June 2008.

Ultimately, the AFGE wishes to have it both ways.  It acknowledges that, according to its constitution and bylaws, it must provide notice and the opportunity to correct for delinquent dues members, and also argues that it was unable to provide the required notice because it was not aware of a problem until 2005.  But at the same time, the union argues that it may retroactively

remove Mr. Castellano from membership dating back to 1996, before it even had any knowledge of the dues infraction. Because the AFGE failed to provide notice and an opportunity to correct, in addition to taking no action – formal or informal – to remove Mr. Castellano from membership until 2008, the union's motion to dismiss for lack of subject matter jurisdiction must be denied. Mr. Castellano met the requirements for membership and was eligible to retain membership status after he left the civil service in 1994. The AFGE did not invoke the proper steps and authority to remove Mr. Castellano from membership, and hence the Court finds that Mr. Castellano was a "member in substance" and that jurisdiction before this Court is proper.

## II.    Candidacy Eligibility

Although Mr. Castellano is a member of AFGE for the purposes of the LMRDA, it must also be shown that he satisfied the requirements for candidacy at the time he announced his intent to run in the May 2008 election. The AFGE Constitution requires that eligible candidates must have worked as "a governmental employee for three consecutive years, and also . . . [have] . . . been a member in good standing of the Federation for the three consecutive years immediately prior to the date of nomination for the office being sought." AFGE Const., Art. VII, Sec. 1(a). In 1996, Mr. Castellano began paying reduced retiree dues and thus his delinquent dues status from 1996-2004 left him ineligible for candidacy in the 2005 election. See Def's Mot. at 8; Pl's Opp'n at 3. The Secretary so concluded in November 2005 and that determination was not challenged.

At the time of the 2005 election, although Mr. Castellano satisfied the occupational requirement, he did not meet the second requirement for candidacy because he had been paying incorrect dues for two of the three years immediately prior to the election. See Def's Mot. at 7; Pl's Mot. at 7. In a letter to Mr. Castellano explaining why his 2005 appeal had been denied, the Department of Labor commented, in regards to future elections, that "if [he was] current in [his] dues at the beginning of a three year period and [paid] full dues to AFGE for the three years immediately preceding the date of nominations, [he] would meet the . . . eligibility requirement." Pl's Ex. 38 (U.S. Department of Labor Letter from Acting Chief, Division of Enforcement Patricia

Fox to Vincent Castellano, November 30, 2005). The Court agrees with that interpretation of AFGE's candidacy requirements.

Mr. Castellano clearly meets the first requirement under the AFGE Constitution in that he was employed as a federal civilian employee for the United States Air Force for a period of three consecutive years. The AFGE Constitution does not require that these three consecutive years be immediately prior to the time of nomination or election. See AFGE Const., Art. VII, Sec. 1(a). In addition, Mr. Castellano was a timely and full dues paying member of the union for more than three years prior to the May 2008 election as required by the AFGE Constitution. See Def's Mot. at 8; Pl's Opp'n at 3. The AFGE argues that Mr. Castellano suffered a permanent loss of membership in 1996 when he improperly switched to retiree status, but the Court finds that there is no basis for this assertion.

The Court finds that the plain meaning of the AFGE Constitution dictates that in order to be eligible for national office one must be in good standing for the three years immediately preceding the election, and one is considered to be in good standing if one is current in dues payments. See AFGE Const., Art. VII, Sec. 1(a). That was true of Mr. Castellano in May 2008. Thus, because he was a member of the AFGE and appropriately satisfied the national candidacy requirements, the Court finds that the AFGE violated section 401 of the LMRDA by refusing to allow Mr. Castellano to run for national office.

### III.     The Violation of Section 401 May Have Affected the Outcome of the Election

Section 402 of the LMRDA requires a district court to declare a contested election void and order a new election under government supervision if the Secretary establishes that a violation of section 401 "may have affected the outcome of the election." 29 U.S.C. § 482(c). The Secretary can establish a prima facie case "by presenting facts that support a finding of any of the alleged LMRDA violations." Local Union 226, Hotel & Restaurant Emps., 718 F. Supp. at 1481. The Secretary can meet its burden by showing a violation of LMRDA because "the prima facie case presumes that there is a 'meaningful relation' between the violations and the election results." Id. at

1484 (referencing Hotel Emps., Local 6, 391 U.S. at 507).  However, the union may rebut the presumption by introducing tangible evidence "which supports a finding that the violation did not affect the result."  Hotel Emps., Local 6, 391 U.S. at 507.

Here, Mr. Castellano was prevented from running for national office in violation of the LMRDA.  By showing a violation of the LMRDA, the Secretary has established a prima facie case and thus the Court must look to the AFGE to rebut this presumption.  In a case where members are prevented from running for office, "whether the outcome would have been different depends upon whether the suppressed candidates were potent vote-getters, whether more union members would have voted had candidates not been suppressed, and so forth . . . any proof relating to effect on outcome must necessarily be speculative."  Id.  (internal citation omitted).  Here, in support of its claim that the election was not affected by the violation, the union argues that "the late per capita tax payment from Local 1778 to AFGE in June 2008, undisputedly one month after the election that is the subject of the instant complaint, would have disqualified [Mr. Castellano] from candidacy at that time anyway."  Def's Opp'n at 17.  The Court struggles to reconcile this statement with the AFGE's motion to dismiss, where it claims it stopped accepting Local 1778's per capita payments on behalf of Mr. Castellano and instead applied the value to the other Local 1778 debits.  See Def's Mot. at 11-12.  Moreover, this argument does not explain how a late payment that came in June 2008, after the filing of a complaint with the Department of Labor and a month after the contested election, demonstrates that the union's LMRDA violation did not affect the outcome of the election.  Because the AFGE has not brought forth evidence that shows the violation did not affect the election result, the Court finds that the violation may have affected the election under section 402 of the LMRDA.  See Local Union 70, Int'l Bhd. of Teamsters, 661 F.2d at 1202.

Upon a finding based on the preponderance of the evidence that a violation of section 401 of the LMRDA may have affected the outcome of an election, "the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary."  29 U.S.C. § 482(c).  Although a district court does have equitable discretion to refuse to order a new

election under narrow circumstances, that discretion is normally limited to situations where changes taken by the union in an untainted intervening election adequately resolve the LMRDA violations.  See Glass Bottle Blowers Ass'n, 389 U.S. at 468; McLaughlin v. Lodge 647, Int'l Bhd. of Boilermakers, 876 F.2d 648, 654 (8th Cir. 1989).  According to the AFGE National Constitution, the terms of national AFGE officers "shall expire on the election and installation of their successors."  AFGE Const., Art. VII, Sec. 2.  National Vice Presidents "are to be nominated and elected at a district caucus to be held within each respective district subsequent to April 30 and prior to June 1 of every third year."  AFGE Const., Article VIII, Sec. 2(a).  Thus, several months remain in the term of the National Vice President, District 2.  The Court does not find this case to fall within the narrow exception and thus, pursuant to 29 U.S.C. § 482(c), will order the May 2008 election for National Vice President, District 2, void and that a new election be conducted under the supervision of the Secretary of Labor.[3]

## CONCLUSION

Accordingly, the Court will grant the Secretary's motion for summary judgment, and will deny AFGE's motion to dismiss or, in the alternative, for summary judgment.  The Court will declare the May 2008 election for the AFGE National Vice President, District 2, void and will direct the AFGE to conduct a new election under the supervision of the Secretary of Labor.  A separate order has been issued on this date.



/s/
JOHN D. BATES
United States District Judge

Dated: February 09, 2011

---

[3] The court recognizes that an election may already be scheduled for May 2011, and leaves to the parties initially any consideration of the impact of an upcoming election on the appropriate relief here.